## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 09 2020, 9:06 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nicholas J. Hursh
Shambaugh, Kast, Beck
& Williams, LLP
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE

Douglas E. Johnston
Tourkow, Crell, Rosenblatt
& Johnston, LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Roxann R. Behnke,<br>*Appellant-Petitioner,*<br><br>v.<br><br>James C. Behnke,<br>*Appellee-Respondent* | January 9, 2020<br><br>Court of Appeals Case No.<br>19A-DN-1627<br><br>Appeal from the Noble Superior Court<br><br>The Honorable Robert E. Kirsch, III, Judge<br><br>Trial Court Cause No.<br>57D01-1710-DN-10 |

**Baker, Judge.**

[1] Roxann Behnke (Wife) and James Behnke (Husband) dissolved their marriage. Wife appeals the trial court's valuation and division of property, arguing that the trial court erred in both respects. Finding no error, we affirm.

## Facts

[2] Husband and Wife married in 2006. Sometime in 2013, Husband and Wife formed YNot Metal, Inc. (YNot), a closely-held corporation. The business specialized in fabricating, bending, welding, and cutting metal. Both Husband and Wife contributed funds from their retirement accounts to capitalize the business. Husband contributed $166,282.10 and owned 166.2821 shares, and Wife contributed $75,835.30 and owned 75.8353 shares.

[3] On August 1, 2017, Wife filed her petition for dissolution of the marriage. The trial court conducted an August 9, 2018, final dissolution hearing, at which Husband and Wife submitted findings of fact and called witnesses to testify. Finally, on February 25, 2019, the trial court issued its findings of fact, conclusions of law, and decree of dissolution of marriage. The trial court found and held, in pertinent part, as follows:

Asset Analysis – [YNot]

***

8. At the time of the filing of the divorce, the business had no intrinsic value other than a liquidation value.

9. As part of the divorce, the hard assets of the business were appraised at a value of $102,835.00. . . . The business had certain

outstanding indebtedness, which brought that value of the business down to $78,426.20.

10. James Houlihan, a certified public accountant and licensed business evaluator, testified as to the value of the business, [YNot].

11. Mr. Houlihan reviewed various tax matters supplied by both parties to him, as well as the tax returns for the business and consideration of other factors, including the fact that 75% of the customer base was one customer, Titan Metal.

12. Based upon all of the information available to him, Mr. Houlihan found the business to be worth $78,217.00, representing the liquidation value of the assets, less liabilities. This amount was not taking into account any pre-marital assets of either party.

13. Mr. Houlihan explained why there was no intrinsic value, in the form of enterprise or personal goodwill for this entity. In short, its lack of profitability prevented such a finding.

***

18. Wife also took the position that there were substantial revenues during the year 2017 that should have resulted in the business actually being on the rise in profitability. However, evidence indicated that she communicated direct[ly] with [Husband] that the business was in trouble. The combination of her own words recognizing trouble, coupled with the default on the loan, all indicate that the liquidation analysis of the expert was based on real world facts and circumstances, as opposed to the position advanced by [W]ife.

19. Wife had argued the business was worth $271,000.00 as reflected on her balance sheet.

20. There was no evidence presented to support that valuation, and the Court declines to accept that as accurate.

21. Accordingly, the Court finds that the net value of the business, [YNot], is $78,217.00 and is set over to Husband.

## Analysis of the Respective Inheritances

22. Wife testified that [H]usband had inherited property from his parents, and that his interest in that property was roughly $25,000.00.

23. The evidence established that, as of the date of the filing of the divorce, [H]usband's father was still alive. Thus, any real estate which passed to [H]usband was not a countable asset in the marriage as of the date of filing.

24. Accordingly, the Court is excluding any of [H]usband's inheritance from the marital pot.

25. Similarly, [W]ife had an inheritance of just over $8,000.00, and [H]usband's position was that [W]ife should receive that inheritance without setoff. The combination of [H]usband's inheritance not even being in existence at the time of the divorce, coupled with his position that [W]ife should be entitled to retain the entirety of her inheritance is eminently reasonable in light of the evidence presented.

26. Accordingly, the Court does not factor any inheritance into the marital pot.

## Analysis of Real Estate

27. At the time of filing of the divorce, Wife owned real estate which she purchased in November[] 2000 for $85,000.00.

28. For the tax year covering the date of filing, the tax assessor placed the value of the real estate at $94,400.00.

29. Wife has taken the position that [H]usband had a prior piece of real estate that should be determined to be his separate property. Husband owned the real estate before the marriage and it was sold during the marriage.

30. The evidence at trial, as presented by [W]ife, indicates that the real estate was sold well before the divorce action. The undisputed testimony was that the funds were consumed in the marital estate and do not separately still exist.

31. Accordingly, the court declines [W]ife's offer to identify the sale of [H]usband's pre-marital estate as a continuing asset in existence for purposes of division herein.

Appealed Order p. 2-4 (emphases omitted).

[4] Ultimately, the trial court ordered an equal 50/50 split of the marital estate. *See id.* at 9. On March 27, 2019, Wife filed a motion to correct errors, which the trial court denied on June 17, 2019, following a hearing. Wife now appeals.

# Discussion and Decision

# I. Standard of Review

[5] Our standard of review for these types of cases is well established:

When reviewing judgments with findings of fact and conclusions of law, Indiana's appellate courts "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). Appellate judges are not to reweigh the evidence nor reassess witness credibility, and the evidence should be viewed most favorably to the judgment. *See Ind. Dep't of Child Servs. v. LaPorte Circuit Court (In re T.S.)*, 906 N.E.2d 801, 804 (Ind. 2009); *J.I. v. J.H. (In re K.I.)*, 903 N.E.2d 453, 457 (Ind. 2009); *Dunson v. Dunson*, 769 N.E.2d 1120, 1123 (Ind. 2002). "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind.1997) (quoting *Estate of Reasor v. Putnam County*, 635 N.E.2d 153, 158 (Ind. 1994)). Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time. Thus enabled to assess credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain

> information and apply common sense, particularly in the
> determination of the best interests of the involved children.

*Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011). "[I]t is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal." *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002).

## II. Valuation

First, Wife argues that the trial court erred in its valuation of property. Specifically, Wife contends that the trial court improperly valued their metal business, YNot.

"[T]he trial court has broad discretion in ascertaining the value of property in a dissolution action[.]" *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). "[W]e will not reverse the trial court unless the decision is clearly against the logic and effect of the facts and circumstances before it." *Id.* The trial court does not err when its valuation of property is within the range of values supported by the evidence. *Sanjari v. Sanjari*, 755 N.E.2d 1186, 1191-92 (Ind. Ct. App. 2001).

From the record, we know that Husband called expert witness James Houlihan, a certified public accountant and licensed business evaluator, to testify as to YNot's business value. Based on his experience and an independent evaluation of the financial documents, Houlihan concluded that YNot was worth $78,217.00. This sum included all liquidated assets in addition to all liabilities and outstanding debts. Wife disputed this figure, arguing that YNot should

have been valued at $271,000.00 given the inherent profitability and intrinsic value of the company.

[9] It is apparent that the trial court gave substantial weight to the testimony of Husband's expert witness, Houlihan. By contrast, the trial court deliberately did not give weight to Wife's contentions about the value of YNot because she did not proffer witnesses—or any reliable evidence, for that matter—to refute Husband's or Houlihan's conclusion. *See Alexander v. Alexander*, 927 N.E.2d 926, 935 (Ind. Ct. App. 2010) (holding that "[a] valuation submitted by one of the parties is competent evidence of the value of property in a dissolution action and may alone support the trial court's determination in that regard[]"). Furthermore, the value calculated by Houlihan was at or near $78,426.20—the net value of YNot—and is within the range of values supported by the evidence.

[10] We will not second-guess the trial court's findings and conclusions unless there is clear error, and here, nothing leads us to believe that the trial court ruled erroneously. Thus, we hold that the trial court did not err in its valuation of YNot.

## III. Division

[11] Next, Wife argues that the trial court erroneously divided the marital estate. Specifically, Wife contends that the trial court should have deviated from the equal division of property by including other assets. "The distribution of marital assets is committed to the sound discretion of the trial court." *Breeden v. Breeden*, 678 N.E.2d 423, 427 (Ind. Ct. App. 1997). "We will only reverse the trial

court's decision when it is clearly against the logic and effect of the facts and circumstances before the court." *Id.*

[12]     "The court shall presume that an equal division of marital property between the parties is just and reasonable, and may deviate from an equal division only when that presumption is rebutted." *Campbell v. Campbell*, 993 N.E.2d 205, 212 (Ind. Ct. App. 2013). Pursuant to Indiana Code section 31-15-7-5, one party can produce evidence of the following, among other things, to demonstrate that an equal division would not be just and reasonable:

> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was incoming producing.
>
> (2) The extent to which the property was acquired by each spouse:
>
>> (A) before the marriage; or
>>
>> (B) through inheritance or gift.
>
> (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of the children.
>
> (4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.
>
> (5) The earnings or earning ability of the parties as related to:
>
>> (A) a final division of property; and
>>
>> (B) a final determination of the property rights of the parties.

[13]     First, Wife argues that the trial court should have ordered that her and her Husband's respective inheritances would be included in the ultimate division of marital property. The trial court ordered, instead, that Wife and Husband would each keep their own respective inheritance money. The trial court reached this decision, in part, because Husband's father, from whom Husband will receive his inheritance, was still alive at the time Wife filed for divorce. Further, there is manifest evidence that Husband wanted Wife to maintain her own inheritance because he felt that he was not entitled to any of that money. It was within the trial court's discretion to make this decision, and we hold that the trial court did not err in determining that the parties would each retain their respective inheritances.

[14]     Next, Wife contends that the trial court erred by not including the value of Husband's real estate that he "sold shortly before the dissolution action and final date of separation." Appellant's Br. p. 16. However, according to the trial court, "[t]he undisputed testimony was that [those] funds were consumed in the marital estate and do not separately still exist." Appealed Order p. 4. Thus, in evaluating the evidence, the trial court decided that those profits from Husband's sale of property did not constitute a separate asset that could be factored into the division of property. Once again, nothing in the record suggests that the trial court erred in making this determination.

[15]     Finally, Wife argues that the trial court should have considered her lower earning capacity and economic circumstances. This amounts to a request that we reweigh the evidence in Wife's favor, which we may not do. Based on the

record and the trial court's final decree, it is clear to us that the trial court carefully and prudently evaluated both parties' assets while simultaneously considering Wife's requests to deviate from the 50/50 split. Nevertheless, the trial court reached the conclusion that an even split would be in the best interests of Husband and Wife, and the record supports such a conclusion. As such, the trial court did not err in this respect.[1]

[16] Thus, we find no error in the trial court's division of property or determination that Wife presented no credible evidence to deviate from the presumption of an equal 50/50 division.

[17] The judgment of the trial court is affirmed.

Riley, J., and Brown, J., concur.

---

[1] Additionally, Wife argues that the trial court did not consider evidence of Husband's actions post-separation as they pertained to YNot and the sale of certain business property. However, this is nothing more than another attempt by Wife to have us revalue the YNot business entity, which, as we have already discussed, was a decision left to the sound discretion of the trial court. Accordingly, we dismiss this argument as redundant.